PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LEGEND NIGHT CLUB,

*Plaintiff-Appellee,*

and

INTERNATIONAL NITE LIFE
ENTERPRISES, INCORPORATED, trading
as The Classic III Supper Club,
a/k/a The Classics,

*Plaintiff,*

v.

DENNIS B. MILLER; EARL J.
HOWARD; FRANKLIN D. JACKSON;
NAM K. KIM; SHAIHI MWALIMU;
STATE OF MARYLAND,

*Defendants-Appellants,*

and

ROBERT EHRLICH; PRINCE GEORGE'S
COUNTY GOVERNMENT; PRINCE
GEORGE'S COUNTY, MARYLAND;
NORMA LINDSAY,

*Defendants.*

No. 09-1540

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, Senior District Judge.
(1:05-cv-02138-MJG)

Argued: September 21, 2010

Decided: February 17, 2011

Before WYNN, Circuit Judge, HAMILTON, Senior Circuit Judge, and Mark S. DAVIS, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Wynn wrote the majority opinion, in which Judge Davis joined. Senior Judge Hamilton wrote a separate opinion concurring in part and dissenting in part.

## COUNSEL

**ARGUED:** Matthew John Fader, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellants. Jimmy A. Bell, LAW OFFICE OF JIMMY A. BELL, PC, Bowie, Maryland, for Appellee. **ON BRIEF:** Douglas F. Gansler, Attorney General of Maryland, Charles J. Butler, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellants.

## OPINION

WYNN, Circuit Judge:

"Under the doctrine of overbreadth, a statute violates the First Amendment it if prohibits a substantial amount of protected expression." *PSINet, Inc. v. Chapman*, 362 F.3d 227, 234 (4th Cir. 2004). Defendants appeal a permanent injunction prohibiting the enforcement of a Maryland statute due to its overbreadth. We conclude that the statute—which limits the range of permissible conduct, attire, and entertainment at establishments licensed to serve alcoholic beverages—prohibits a broad swath of expression protected by the

First Amendment and is not susceptible to a limiting construction. Accordingly, we affirm the permanent injunction prohibiting enforcement of the statute.

I.

Plaintiffs The Legend Night Club ("The Legend") and International Nite Life Enterprises, Inc. ("The Classics") operate adult entertainment establishments in Prince George's County, Maryland. Plaintiffs are licensed by the Prince George's County Board of License Commissioners to serve alcoholic beverages at these establishments.

In 2005, Plaintiffs filed separate complaints challenging the constitutionality of statutory amendments, which, if enforced, would prohibit them from providing both alcoholic beverages and adult entertainment. The complaint filed by The Legend named as defendants the State of Maryland, Prince George's County, the Prince George's County Board of License Commissioners, Governor Robert Ehrlich, and the individual members of the Prince George's County Board of License Commissioners (Franklin D. Jackson, Earl J. Howard, Nam K. Kim, Dennis B. Miller, and Shaihi Mwalimu). The Classics' complaint included the same entities and individuals as defendants, with the exception of Governor Ehrlich. The Classics' complaint also added as a defendant Norma Lindsay, the Chief Liquor Inspector for the Board of License Commissioners. In October 2005, based on the joint stipulations of the parties, the district court dismissed the claims against Governor Ehrlich and the State of Maryland. The State later intervened to defend the statute's constitutionality under 28 U.S.C. § 2403(b).

At issue in both cases was a statutory amendment that added Prince George's County to a list of jurisdictions in which certain attire and conduct is prohibited in establishments licensed to sell alcoholic beverages. Specifically, the statute—effective on October 1, 2005—forbids a person from:

(1) Be[ing] employed or used in the sale or service of alcoholic beverages in or upon the licensed premises while the person is unclothed or in attire, costume or clothing so as to expose to view any portion of the female breast below the top of the areola or of any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals;

(2) Be[ing] employed or act[ing] as a hostess or act[ing] in a similar-type capacity to mingle with the patrons while the hostess or person acting in a similar-type capacity is unclothed or in attire, costume or clothing as described in paragraph (1) of this subsection;

(3) Encourag[ing] or permit[ting] any person on the licensed premises to touch, caress or fondle the breasts, buttocks, anus or genitals of any other person; or

(4) Permit[ting] any employee or person to wear or use any device or covering exposed to view, which simulates the breast, genitals, anus, pubic hair or any portion of it.

Md. Code, Art. 2B § 10-405(c) (2005). The statute also restricts certain entertainment, specifically prohibiting a person from:

(1) Permit[ting] any person to perform acts of or acts which simulate:

(i) The act of sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law;

(ii) The touching, caressing or fondling of the breast, buttocks, anus or genitals; or

(iii) The display of the pubic hair, anus, vulva or genitals;

(2) Permit[ting] any entertainer whose breasts or buttocks are exposed (subject to the restrictions of paragraph (1) of this subsection) to perform closer than six feet from the nearest patron; or

(3) Permit[ting] any person to use artificial devices or inanimate objects to depict, perform or simulate any activity prohibited by paragraph (1) of this subsection.

*Id.* § 10-405(d).

Under the statute, an establishment found engaging in prohibited activities would have its license to sell alcoholic beverages revoked. *Id.* § 10-405(b) (2005) ("Any license issued under the provisions of this article shall be revoked if . . . any of the activities listed in this section are found to occur on any premises or location for which the license was issued.").

The statute also exempts, under a grandfather clause, certain long-term license holders from potential license revocation. That clause provides an exemption for:

a current alcoholic beverages license holder that currently conducts an activity that is made unlawful by this Act only if the license holder:

(a) received approval from the Board to conduct the activity on or before August 15, 1981; and

(b) has owned the licensed premises continuously since September 1, 1981.

2005 Md. Laws 262 § 2.

Plaintiffs contend that the statute as amended is overbroad in violation of the First Amendment. Plaintiffs also contend that the grandfather clause under the statute was intentionally drafted to provide an exemption for the Ebony Inn, an establishment owned by a former state senator. As such, Plaintiffs argue that the grandfather clause violated the Equal Protection Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights.

Plaintiffs sought a prohibitory injunction and a declaration that the statute as amended was unconstitutional. On September 30, 2005, the district court entered a temporary restraining order enjoining Defendants from enforcing the statute as amended. On March 27, 2006, the district court issued a preliminary injunction forbidding enforcement of the statute. The district court then stayed and administratively closed the cases on July 17, 2006, recognizing that they "may be affected, and possibly mooted, by action in the next session of the Maryland Legislature." By letter of December 20, 2007, the State of Maryland advised the district court that although "[t]he Court issued the stay to provide the General Assembly an opportunity to amend the statute at issue in this litigation, . . . [d]uring the 2007 Legislative Session, the General Assembly declined to take action on this statute." The State of Maryland also moved to reopen the cases as expressly allowed by the district court's orders. The district court granted the State's motion on April 2, 2008 and, in the same order, consolidated The Legend's and The Classics' cases.

After a bench trial, the district court issued a written opinion on April 1, 2009. The court held that the statute as amended was unconstitutionally overbroad and not readily susceptible to a limiting construction. The court further held that the grandfather clause violated the Equal Protection Clause and declined to sever the grandfather clause from the statute. Accordingly, on April 30, 2009, the district court entered a permanent injunction stating that "[n]either Defendant Prince George's County Board of License Commission-

ers nor any other person or entity shall take action to close Plaintiffs' premises, or to suspend or revoke their licenses, based upon any alleged violation of Md. Ann. Code, Article 2B, Section 10-405, as amended by H.B. 1133." The State of Maryland and individual defendants Franklin D. Jackson, Earl J. Howard, Nam K. Kim, Dennis B. Miller, and Shaihi Mwalimu (collectively "Defendants") appealed.

## II.

Defendants first argue that the district court erred in finding the statute overbroad because there was no evidence that the law would be applied unconstitutionally. They further contend that even if the statute is facially overbroad, it is susceptible to a limiting construction capable of ensuring its constitutionality.

The district court issued a permanent injunction after concluding that the statute was unconstitutionally overbroad. Under "well-established principles of equity," a plaintiff seeking a permanent injunction must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). We review the grant of a permanent injunction for an abuse of discretion. *Virginia Soc'y for Human Life, Inc. v. Fed. Election Comm'n*, 263 F.3d 379, 392 (4th Cir. 2001). However, the "underlying factual findings are reviewed for clear error, and legal conclusions are reviewed de novo." *Id.* Because the district court issued a permanent injunction after concluding that the statute was unconstitutionally overbroad,

we begin our inquiry with a de novo review of the district court's holding.

Under the overbreadth doctrine, a plaintiff

> whose own speech or expressive conduct may validly be prohibited or sanctioned is permitted to challenge a statute on its face because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid.

*Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 503 (1985). Consequently, even if Plaintiffs have no intention of offering artistic performances at their establishments, they are entitled to mount the instant facial challenge to the statute to protect the rights of those who wish to do so. *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 512 (4th Cir. 2002) ("Carandola I")("[T]he overbreadth doctrine allows Carandola to assert the First Amendment rights of those who do wish to 'present or act' in a ballet or other theatrical production, even if Carandola does not.").

Plaintiffs argue that the statute is unconstitutionally overbroad because it "limits activity which can include a ballet, a Shakespearian play, and other mainstream productions" of artistic merit. Brief of Appellee at 18. Because the prohibition against statutory enforcement that accompanies a finding of overbreadth constitutes "strong medicine," the Supreme Court has counseled lower courts to declare statutes facially overbroad "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). Accordingly, "where conduct and not merely speech is involved, . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.* at 615; *see also New York v. Ferber*, 458 U.S. 747, 771 (1982) ("[A] law should not be invalidated for over-

breadth unless it reaches a substantial number of impermissible applications . . . .").

The purpose for which legislation is adopted dictates the level of scrutiny applied to ascertain whether the law exceeds its "plainly legitimate sweep." "If the regulation was adopted to burden disfavored viewpoints or modes of expression, a court applies strict scrutiny." *Carandola I*, 303 F.3d at 512. In contrast, content-neutral statutes receive intermediate scrutiny. *See City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 434 (2002). We have previously noted that

> measures to regulate sexually explicit entertainment outside the home receive intermediate scrutiny if they are not premised on a desire to suppress the content of such entertainment, but rather to address the harmful secondary effects of such entertainment: higher crime rates and lower property values, and unwanted interactions between patrons and entertainers, such as public sexual conduct, sexual assault, and prostitution.

*Carandola I*, 303 F.3d at 513 (citations omitted).

Defendants contend that the statute was amended to address the secondary effects of presenting nude dancing in establishments that serve alcohol. Brief of Appellant at 8. Nothing in the amendment itself, however, indicates the motivation for its adoption. *Cf. City of Erie v. Pap's A.M.*, 529 U.S. 277, 290 (2000) (plurality opinion) (noting that the preamble to the ordinance at issue stated purpose of prohibiting entertainment that "provid[es] an atmosphere conducive to violence, sexual harassment, public intoxication, prostitution, the spread of sexually transmitted diseases and other deleterious effects"). Nor did Defendants, for example, present any studies relied upon by the Maryland General Assembly to establish the secondary effects supposedly targeted by the amendment.

Instead, Defendants ask this Court to infer legislative purpose from the fact that letters from various municipalities in support of the amendment indicated a general concern for certain secondary effects. However, we will not impute the motives of entities lobbying for legislation to the General Assembly itself. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 120 (2001) (stating that the Court "ought not attribute to Congress an official purpose based on the motives of a particular group that lobbied for or against a certain proposal"). We also decline Defendants' invitation to infer that because a triple-homicide occurred near a strip club before the adoption of the amendment, the General Assembly intended, with the amendment, to reduce such violence—particularly when Defendants offered no evidence that the legislature even considered this particular incident in conjunction with the amendment.

When considering a substantially similar statute that also lacked evidence of legislative intent in *Carandola I*, this Court applied intermediate scrutiny. *See Carandola I*, 303 F.3d at 514 ("Even though the Commission has submitted no direct evidence of legislative motive, we believe that precedent requires us to evaluate the challenged restrictions as content-neutral provisions aimed at secondary effects."). In doing so, we noted that the challenged statute was part of a larger body of alcohol control law "enacted to prevent illegal and disorderly conduct that may arise where alcohol is served to the public." *Id.* at 514-15 (citation omitted).

The statute at issue here is similarly part of a broad article in the Maryland Code regulating the sale of alcohol "for the protection, health, welfare and safety" of the people of Maryland. *See* Md. Code, Art. 2B § 1-101 (2005); *see also State v. Petrushansky*, 183 Md. 67, 71, 36 A.2d 533, 535 (1944) (stating that statutory interpretation of a provision in Article 2B requires the court to consider all parts of the Article together, "as they form part of a general system"). Moreover, Article 2B specifically contemplates license revocation when "neces-

sary to promote the peace or safety of the community in which the place of business is situated." Md. Code, Art. 2B, § 10-401 (2005). Thus, as in *Carandola I*, we conclude that at least one purpose of the statute was to address the secondary effects resulting from the combination of alcohol and nude dancing. "Within the limited field of regulations on public exhibitions of adult entertainment, this suffices for us to treat the [statute] as content-neutral and so subject only to intermediate scrutiny." *Carandola I*, 303 F.3d at 515 (citation omitted).

To withstand intermediate scrutiny, the challenged regulation must "materially advance[ ] an important or substantial interest by redressing past harms or preventing future ones." *Satellite Broad. & Commc'ns Ass'n v. FCC*, 275 F.3d 337, 356 (4th Cir. 2001). Again, Defendants contend that the statute was amended to address the secondary effects arising from the combination of adult entertainment and alcohol consumption. As noted by the district court, however, "Defendants have not produced evidence of harmful secondary effects in Prince George's County, Maryland."

"This failure might not pose a problem if the challenged restrictions applied only to bars and clubs that present nude or topless dancing." *Carandola I*, 303 F.3d at 516. "Such entertainment has 'a long history of spawning deleterious effects,' including 'prostitution and the criminal abuse and exploitation of young women,' and in most cases a city or state need carry only a minimal burden to demonstrate its interest in regulation of such activity." *Id.* (quoting *Steakhouse, Inc. v. City of Raleigh*, 166 F.3d 634, 637 (4th Cir. 1999)). However, even assuming *arguendo* that the statute materially advances an important and current governmental interest, the nature of Plaintiffs' overbreadth challenge compels us to consider whether the statute adversely affects a substantial amount of protected speech beyond that restricted under the statute's "plainly legitimate sweep." *Id.* at 515; *see also Satellite Broad. & Commc'ns Ass'n*, 275 F.3d at 356 ("If the regulation

materially advances some important or substantial interest, we then . . . ask whether the regulation is narrowly tailored to serve that interest."); *Shelton v. Tucker*, 364 U.S. 479, 488 (1960) ("[E]ven though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.").

The statute imposes restrictions that extend well beyond strip clubs and other establishments primarily offering adult entertainment. Like the regulation at issue in *Carandola I*, "the plain language of the restrictions prohibits on licensed premises any entertainment that 'simulate[s]' sexual behavior, even if performers are fully clothed or covered, and even if the conduct is integral to the production—for example, a political satire, a Shakespeare play depicting young love, or a drama depicting the horrors of rape." *Carandola I*, 303 F.3d at 516. These restrictions "have the same prohibitory effect on much non-erotic dance—such as a ballet in which one dancer touches another's buttock during a lift—and all nudity or simulated nudity, however brief, in productions with clear artistic merit—such as the Pulitzer Prize winning play, *Wit*." *Id.* We recognize that "[e]xpressive conduct enjoys less protection than does pure speech and restrictions on its exercise are more likely to be constitutionally permissible." *Steakhouse*, 166 F.3d at 637 (citation omitted). However, a statute prohibiting such a broad swath of expressive conduct cannot pass constitutional muster.

Defendants do not argue that restricted artistic performances produce the secondary effects purportedly targeted by the statute. Instead, they argue that the statute is immune from this overbreadth challenge because no establishment licensed to serve alcohol in Prince George's County presents productions of artistic merit that would fall within the statute's ambit. "However, where the statute unquestionably attaches sanctions to protected conduct, the likelihood that the statute will deter that conduct is ordinarily sufficiently great to justify

an overbreadth attack." *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 n.19 (1984) (citation omitted). The Constitution provides protection "from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002). As noted by the district court, the statute "would prohibit any existing, or new, liquor licensee from starting to present serious artistic performers that would violate the restrictions." Thus, as in *Carandola I*, we conclude that the statute at issue reaches a substantial number of impermissible applications.

Defendants attempt to distinguish our holding in *Carandola I* on the basis that, in that case, the Commission charged with enforcing the challenged regulation conceded that the law would reach artistic productions at a number of venues licensed to serve alcohol. In contrast, Defendants made no such concessions here and instead argue, based on the history of the statute's enforcement, that the statute would be applied only to adult entertainment establishments. Essentially, Defendants implore this Court to ignore the plain language of the statute and rely instead on the government's assurances that the statute would not be unconstitutionally enforced. In support of this plea, Defendants submitted affidavits from enforcement authorities in nine counties where the statute currently applies, each stating that in the relevant jurisdiction, § 10-405 has never been enforced against an establishment offering productions of clear artistic merit. Nevertheless, no limitation on the scope of the sweeping prohibitions exists *in the statute*.

Generally, however, we will not strike down a statute as facially overbroad if its constitutionality can be preserved through a "limiting construction" or "partial invalidation" capable of "remov[ing] the seeming threat or deterrence to constitutionally protected expression." *Broadrick*, 413 U.S. at 613; *see also Carandola I*, 303 F.3d at 512. Indeed, as a general principle "every reasonable construction must be resorted

to, in order to save a statute from unconstitutionality." *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988)(quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)). That said, we will not alter a state statute unless the regulation is "readily susceptible" to the proffered construction. *Giovani Carandola, Ltd. v. Fox*, 470 F.3d 1074, 1084 (4th Cir. 2006) ("Carandola II"); *see also Va. Soc. for Human Life, Inc. v. Caldwell*, 152 F.3d 268, 270 (4th Cir. 1998) (explaining that "federal courts are without power to adopt a narrowing construction of a *state* statute unless such a construction is reasonable and readily apparent" (quoting *Boos v. Barry*, 485 U.S. 312, 330-31 (1988)(emphasis added)). Indeed, we must be careful not to encroach upon the domain of a state legislature by "rewrit[ing] a law to conform it to constitutional requirements." *PSINet*, 362 F.3d at 236 (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 884-85 (1997)). Therefore "narrowing constructions are only appropriate when 'the text or other source of congressional intent' identifies a clear line that a court could draw." *Id.* (quoting *Reno*, 521 U.S. at 884).

While Defendants argue that the statute has been, and will be, enforced only against adult entertainment establishments, they do not propose a way to read the statute such that it would apply only to those licensees. A history of limited enforcement is insufficient to establish the susceptibility of a statute to a limiting construction, particularly when the language of the statute itself lacks any limitation on the scope of enforcement. *See Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 260 n.8 (4th Cir. 2003) (noting that even though school dress code had been enforced only to ban "images of gunmen aiming high-powered firearms," this was insufficient to establish a limiting construction when the dress code did "not even remotely suggest" such a limitation); *see also United States v. Stevens*, 130 S. Ct. 1577, 1591 (2010) ("[T]he First Amendment protects against the Government; it does not leave us at the mercy of the *noblesse oblige*. We

would not uphold an unconstitutional statute merely because the Government promised to use it responsibly."). Indeed, the language of the statute here suggests no limit whatsoever to its enforcement, and the Defendants' failure to "even suggest a possible limiting construction" is consistent with this Court's conclusion that the statute is not readily susceptible to a limiting construction. *Carandola II*, 470 F.3d at 1078 (noting absence of suggested limiting construction in *Carandola I* court's finding that statute was not readily susceptible to limiting construction).

The Maryland General Assembly could, of course, appropriately limit the statute. Notably, to rescue the statute at issue in *Carandola I* from unconstitutional overbreadth, the North Carolina legislature amended it to include a "carve-out" provision stating that:

> [t]his section does not apply to persons operating theaters, concert halls, art centers, museums, or similar establishments that are primarily devoted to the arts or theatrical performances, when the performances that are presented are expressing matters of serious literary, artistic, scientific, or political value.

N.C. Gen. Stat. § 18B-1005.1(c) (2005); *see Carandola II*, 470 F.3d at 1084; *Imaginary Images, Inc. v. Evans*, 612 F.3d 736, 751 (4th Cir. 2010) ("Virginia's prohibition on mixed beverages at venues like Papermoon is within the statutes' legitimate sweep. And cultural venues offering 'matters of serious literary, artistic, scientific, or political value' are properly exempted."). However, where a statute requires an amendment to pass constitutional muster, we cannot usurp the legislature's role and rewrite it. *See PSINet*, 362 F.3d at 236.

The dissent argues that subsection (d) of the statute may be excised, leaving the remainder of the statute, including subsection (c), fully operative. However, to make it fully operative, in addition to severing subsection (d), the dissent also

imposes a narrowing construction on subsection (c) that, like excision of subsection (d), was never suggested by Defendants. While it might be argued that the Maryland Code's general severability provision and the "[s]eparability" provision in its alcoholic beverages article suggest that partial invalidation should be attempted here, Md. Code, Art. 1 § 23, Md. Code, Art. 2B § 1-104, the dissent relies upon a complex combination of unsolicited partial invalidation and narrowing construction in an effort to save the statute. These efforts to save the statute stand in stark contrast to the inaction of the Maryland legislature. After the district court issued its Preliminary Injunction Order prohibiting enforcement of the statute at issue, it stayed the proceedings to give the Maryland legislature an opportunity to amend the statute. However, the legislature "declined" to take action on this statute in the 2007 session, and failed to take any action during the 2008 and 2009 sessions before the district court's permanent injunction of April 2009. Like the Supreme Court,

> we are wary of legislatures who would rely on our intervention, for "[i]t would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside" to announce to whom the statute may be applied. *United States v. Reese*, 92 U.S. 214, 221 (1876). "This would, to some extent, substitute the judicial for the legislative department of the government." *Ibid.*

*Ayotte v. Planned Parenthood of Northern New Eng.*, 546 U.S. 320, 330 (2006).

The dissent's efforts to save the statute would usurp the legislature's role, rewrite the statute, and leave it without the important carve-out provision for matters of literary, artistic, scientific, or political value relied upon by this Court in *Carandola II*, 470 F.3d at 1084-85, and *Imaginary Images*, 612 F.3d at 751.

In summary, because we hold that the statute as amended (1) prohibits a substantial amount of expression that is protected by the First Amendment and (2) is not readily susceptible to a limiting construction, we conclude that the district court did not err in its determination that the statute was unconstitutionally overbroad.

Given that conclusion, while the district court did not discuss the test for granting a permanent injunction, we discern no abuse of discretion in the court's decision to issue the injunction. As to irreparable injury, it is well established that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion) (citation omitted). Further, the threatened injury in this case (i.e., license revocation) constituted "direct penalization, as opposed to incidental inhibition" of First Amendment rights, thus making it the sort that could not be remedied absent an injunction. *Hohe v. Casey*, 868 F.2d 69, 72-73 (3d Cir. 1989) (quoting *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983). Moreover, monetary damages are inadequate to compensate for the loss of First Amendment freedoms. *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004). Regarding the third requirement for injunctive relief, the threatened injury to Plaintiffs easily outweighs whatever burden the injunction may impose. At a minimum, each Plaintiff faces a loss of its license coupled with a loss of valuable business opportunities. *Carandola I*, 303 F.3d at 521. By contrast, the State of Maryland is in no way harmed by issuance of an injunction that prevents the state from enforcing unconstitutional restrictions. *See Joelner*, 378 F.3d at 620 (questioning the "harm to a municipality when it is prevented from enforcing an unconstitutional statute because it is always in the public interest to protect First Amendment liberties") (quotation omitted). And fourth, upholding constitutional rights is in the public interest. *Carandola I*, 303 F.3d at 521. Because each of the factors that we consider when deciding whether to grant injunctive relief weighs in favor of Plaintiffs,

we conclude that the district court did not abuse its discretion by issuing a permanent injunction against the enforcement of the statute.

### III.

Defendants also argue that the district court erred in concluding that the statute's grandfather clause, exempting certain long-term licensees from the statute's ambit, violated the Equal Protection Clause of the Fourteenth Amendment. Because the statute is facially overbroad, its enforcement is "totally forbidden." *Carandola I*, 303 F.3d at 512 (citing *Broadrick*, 413 U.S. at 613, for the proposition that if a statute is overbroad and cannot be rendered constitutional through a limiting construction or partial invalidation, "any enforcement" thereof is "totally forbidden"). We therefore do not need to address this exemption.

### IV.

In conclusion, we affirm the district court's permanent injunction against the enforcement of Md. Code Art. 2B, § 10-405 as amended by H.B. 1133.

*AFFIRMED*

HAMILTON, Senior Circuit Judge, concurring in part and dissenting in part:

The majority is correct in holding that the intermediate level of scrutiny applies to test the constitutionality of Maryland Code, Article 2B, § 10-405(c)-(d), as amended by 2005 Md. Laws ch. 262, (the Challenged Statute) under the First Amendment to the United States Constitution, U.S. Const. amend I. Applying the intermediate level of scrutiny, subsection (d) of the Challenged Statute reaches a substantial number of impermissible applications. However, because subsection (d) is severable from the remaining provisions of

the Challenged Statute, the Challenged Statute should be partially invalidated, rather than facially invalidated, leaving its remaining provisions intact. Also, I would reach the Equal Protection Clause challenge against the grandfather clause, 2005 Md. Laws ch. 262, § 2 (the Grandfather Clause), hold the Grandfather Clause unconstitutional as a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, U.S. Const. amend. XIV, § 1, and sever the Grandfather Clause from the Challenged Statute. Accordingly, I concur in part and dissent in part.

## I

## A

"Article 2B of the Maryland Code ("Article 2B") comprehensively regulates the manufacture, sale, distribution, transportation and storage of alcoholic beverages in [Maryland]." *Paek v. Prince George's County Bd. of License Comm'rs*, 851 A.2d 540, 544 (Md. 2004). "The stated purpose of Article 2B is 'to obtain respect and obedience to law and to foster and promote temperance.'" *Id.* (quoting Md. Code, Art. 2B, § 1-101(a)(1)). Article 2B further states:

> It is the legislative intent that the policy will be carried out in the best public interest by empowering . . . the various local boards of license commissioners and liquor control boards . . . with sufficient authority to administer and enforce the provisions of this article . . . . The restrictions, regulations, provisions and penalties contained in this article are for the protection, health, welfare and safety of the people of this State.

Md. Code, Art. 2B, § 1-101(a)(2)-(3). In relevant part, Article 2B, § 10-405(b), provides that an establishment's liquor license shall be revoked if any of the activities listed in subsection (c) of the Challenged Statute, pertaining to restrictions

on attire and conduct, or subsection (d) of the Challenged Statute, pertaining to restrictions on entertainment, occur on the licensed premises.

Subsection (c) of the Challenged Statute provides:

With respect to attire and conduct, a person may not:

(1) Be employed or used in the sale or service of alcoholic beverages in or upon the licensed premises while the person is unclothed or in attire, costume or clothing so as to expose to view any portion of the female breast below the top of the areola or of any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals;

(2) Be employed or act as a hostess or act in a similar-type capacity to mingle with the patrons while the hostess or person acting in a similar-type capacity is unclothed or in attire, costume or clothing as described in paragraph (1) of this subsection;

(3) Encourage or permit any person on the licensed premises to touch, caress or fondle the breasts, buttocks, anus or genitals of any other person**;** or

(4) Permit any employee or person to wear or use any device or covering exposed to view, which simulates the breast, genitals, anus, pubic hair or any portion of it.

Md. Code, Art. 2B, § 10-405(c).

Subsection (d) of the Challenged Statute provides:

With respect to entertainment provided, a person may not:

(1) Permit any person to perform acts of or acts which simulate:

(i) The act of sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law;

(ii) The touching, caressing or fondling of the breast, buttocks, anus or genitals; or

(iii) The display of the pubic hair, anus, vulva or genitals;

(2) Permit any entertainer whose breasts or buttocks are exposed (subject to the restrictions of paragraph (1) of this subsection) to perform closer than six feet from the nearest patron; or

(3) Permit any person to use artificial devices or inanimate objects to depict, perform or simulate any activity prohibited by paragraph (1) of this subsection.

Md. Code, Art. 2B, § 10-405(d).

B

"Pursuant to the overbreadth doctrine, a party may challenge a statute on its face because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." *Giovani Carandola, Ltd. v. Fox (Carandola II)*, 470 F.3d 1074, 1081 (4th Cir. 2006) (internal quotation marks omitted). Where, as here, "conduct and not merely speech is involved[,] the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.* (internal quotation

marks, alteration marks, and ellipses omitted). "A law should
not be invalidated for overbreadth unless it reaches a substan-
tial number of impermissible applications," and "[a] court
should invoke a limiting construction or employ partial invali-
dation before resorting to a finding of facial overbreadth." *Id.*
(ellipses, internal quotation marks, and alteration marks omit-
ted). As the Supreme Court has explained:

> Generally speaking, when confronting a constitu-
> tional flaw in a statute, we try to limit the solution
> to the problem, severing any problematic portions
> while leaving the remainder intact. Because the
> unconstitutionality of a part of an Act does not nec-
> essarily defeat or affect the validity of its remaining
> provisions, the normal rule is that partial, rather than
> facial, invalidation is the required course.

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*,
130 S. Ct. 3138, 3161 (2010) (internal quotation marks, cita-
tions, and alteration marks omitted).

The intermediate level of scrutiny applies to content-neutral
restrictions on speech or other forms of expression protected
by the First Amendment aimed at ameliorating the harmful
secondary effects of such speech or expression. *Giovani Car-
andola, Ltd. v. Bason* (*Carandola I*), 303 F.3d 507, 514 (4th
Cir. 2002). The majority correctly concludes that at least one
purpose of the Challenged Statute is to address the secondary
effects resulting from the combination of alcohol and nude
dancing, which purpose is sufficient for us to treat the Chal-
lenged Statute as content-neutral, triggering application of the
intermediate level of scrutiny. *Ante* at 11. To pass muster
under the intermediate level of scrutiny, "a law must be nar-
rowly tailored to serve substantial governmental interests."
*Am. Life League Inc. v. Reno*, 47 F.3d 642, 648-49 (4th Cir.
1995).

Beginning with the substantial-governmental-interests
prong, even without considering any evidence, the conclusion

is inescapable that Maryland has a substantial interest in regulating nude and topless dancing and has a substantial interest in regulating simulated sexual activity and fondling of sexual organs in establishments holding liquor licenses. *See Carandola II*, 470 F.3d at 1082 (concluding that, "even without considering any evidence," North Carolina "has a substantial interest in regulating nude and topless dancing, because such entertainment has a long history of spawning deleterious effects," and "a substantial interest in regulating simulated sexual activity and fondling of sexual organs" in establishments holding liquor licenses, because North Carolina "may rely on evidentiary foundation set forth in [*City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986) and *Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976)], to the effect that harmful secondary effects are caused by the presence of even one adult entertainment establishment in a given neighborhood," (internal quotation marks and alteration marks omitted)).

This brings us to the narrowly tailored prong of intermediate scrutiny. In my view, the entirety of subsection (c) of the Challenged Statute passes muster under this prong. Subsections (c)(1) and (c)(2) of the Challenged Statute, unlike the old and new versions of North Carolina's adult entertainment statute at issue in *Carandola I* and *Carandola II*, respectively, specifically tie their restrictions pertaining to persons "unclothed or in attire, costume or clothing so as to expose to view any portion of the female breast below the top of the areola or of any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals" to those selling or serving alcoholic beverages or to those acting as a hostess mingling with the patrons or in a similar-type capacity, and thus do not burden First Amendment protected artistic expression such as a ballet, a Shakespearian play, or other mainstream productions. Md. Code, Art. 2B, § 10-405(c)(1). Additionally, the Challenged Statute's structural division of "Attire and conduct" restrictions in subsection (c) from "Entertainment restrictions," in subsection (d) strongly supports this conclusion.

Under this division, the prohibitions set forth in subsection (c) are reasonably construed as not pertaining to entertainment at all, but to patrons of the licensed establishment and to those employees not engaged in the entertainment of patrons. *See Carandola II*, 470 F.3d at 1084 ("On a facial challenge, we must apply a reasonable limiting construction where one is available.").

Similarly, subsections (c)(3) and (c)(4) of the Challenged Statute, do not burden First Amendment protected artistic expression, because they are reasonably read as not pertaining to entertainment at all, but to patrons of the licensed establishment and to those employees not engaged in the entertainment of patrons.[1] Moreover, at least with respect to subsection (c)(3)'s prohibition on fondling of the breasts, buttocks, anus, etc., the language is reasonably interpreted "to prohibit only [actual] manipulation of specified erogenous zones," *Carandola II*, 470 F.3d at 1084, which prohibition "has no prohibitory effect on non-erotic dance and would not apply to other mainstream entertainment, including popular and award-winning musicals such as *Cabaret, Chicago, Contact,* and *The Full Monty*," *id.* at 1083 (internal quotation marks omitted).

In my view, the constitutional problems with the Challenged Statute arise under subsection (d). I agree with the majority opinion to the extent that it holds that the prohibitions in subsection (d) of the Challenged Statute reach a substantial number of impermissible applications to First Amendment protected expression, including, for example, the ballet or a drama depicting the horrors of rape. *Ante* at 12-13. The language of the old version of North Carolina's adult entertainment statute that we found in *Carandola I* to substantially burden First Amendment protected expression is contained in subsection (d) of the Challenged Statute. *Carandola I*, 303 F.3d at 516. Not surprisingly, the majority's holding in

---

[1]The "Entertainment restrictions" are specifically addressed in subsection (d) of the Challenged Statute. Md. Code, Art. 2B, § 10-405(d).

the present case that the Challenged Statute is unconstitutionally overbroad focuses upon this same language. While we know based upon our decision in *Carandola II*, 470 F.3d at 1083-84, (1) with respect to entertainment provided on licensed premises, the Challenged Statute's prohibition on "simulate[d]" sexual acts is readily susceptible to the construction that it only applies to performances that give the realistic impression or illusion that sexual intercourse or masturbation, etc., is being performed for the audience, Md. Code, Art. 2B, § 10-405(d)(1)(i), (2) with respect to entertainment provided on licensed premises, the Challenged Statute's prohibition on "fondling of the breast, buttocks, anus or genitals," *id.* at § 10-405(d)(1)(ii), is readily susceptible to the construction that it "only bars a performer from actually manipulating specified erogenous zones," *Carandola II*, 470 F.3d at 1083 (internal quotation marks omitted), and (3) while these limiting constructions cure much of subsection (d)'s overbreadth problems, such constructions are inadequate to cure those problems completely. Critically, the *Carandola II* court upheld against a facial overbreadth challenge the new version of North Carolina's adult entertainment statute *based upon the combination* of the limited constructions just mentioned *and* the then newly enacted carve-out provision for "persons operating theaters, concert halls, art centers, museums, or similar establishments that are primarily devoted to the arts or theatrical performances, when the performances that are presented are expressing matters of serious literary, artistic, scientific, or political value," N.C. Gen. Stat. § 18B-1005.1 (2005), which the court determined "shelter[ed] most protected activity," *Carandola II*, 470 F.3d at 1085. *See also id.* (holding that the new version of North Carolina's adult entertainment statute, with the limited constructions of the language at issue proffered by North Carolina's Alcohol Beverage Control Commission and the carve-out provision, does not reach a substantial number of impermissible applications, and therefore, reversing the portions of the district court's order holding subsections (a)(2) and (a)(3) of the statute unconstitutional as facially overbroad). Accordingly, subsection (d) of the Challenged Statute applies to a substantial amount of protected expression such as ballet performances, theatrical productions, and comedy routines at comedy clubs. Thus, to the extent the majority opinion affirms the district court's striking down of subsection (d) of the Challenged Statute and its cor-

responding permanent injunction against the enforcement of subsection (d), I concur in the proposed opinion and the judgment.

However, I disagree with the majority's holding that the Challenged Statute is not readily susceptible to a limiting construction, and its implicit holding that the Challenged Statute is not susceptible to partial invalidation. First, the Challenged Statute is readily susceptible to the limiting construction that subsection (c) does not pertain to performers or persons otherwise engaged in protected expression.[2] Second, with the excise of subsection (d) from the Challenged Statute, the Challenged Statute, including subsection (c), remains "'fully operative as a law.'" *Free Enter. Fund*, 130 S. Ct. at 3161 (one set of internal quotation marks omitted). Third, it is not evident that Maryland's legislature would not have enacted the attire and conduct restrictions contained in subsection (c) of the Challenged Statute in the absence of an ability to enact the entertainment restrictions contained in subsection (d) of the Challenged Statute, and therefore, we must sustain the Challenged Statute's remaining provisions. *Id.* (upholding Sarbanes-Oxley Act with unconstitutional tenure restrictions excised, because remaining provisions were capable of func-

---

[2]The majority broadly asserts that recognizing and applying this reasonable limiting construction of subsection (c) usurps the role of the Maryland legislature and rewrites the Challenged Statute. *Ante* at 16. This assertion is without merit. First, such limiting construction does not read subsection (c) as meaning something else than what it actually states, and therefore, rewrites nothing. Second, the "principle that statutes will be interpreted to avoid constitutional difficulties," is "well-established," *Frisby v. Schultz*, 487 U.S. 474, 483 (1988), and "[t]hus, where an unconstitutionally broad statute is 'readily subject to a narrowing construction' that would eliminate its constitutional deficiencies, we accept that construction," *Berger v. City of Seattle*, 569 F.3d 1029, 1046 (9th Cir. 2009) (quoting *Frisby*, 487 U.S. at 482). *See also Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 397 (1988) ("It has long been a tenet of First Amendment law that in determining a facial challenge to a statute, if it be readily susceptible to a narrowing construction that would make it constitutional, it will be upheld." (internal quotation marks omitted)).

tioning independently and no evidence that Congress would not have enacted remaining provisions independently of unconstitutional tenure restrictions). The result limits the solution to the problem in accordance with Supreme Court precedent. *Id.* ("Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." (internal quotation marks omitted)). Thus, to the extent the majority opinion affirms the district court's striking down of subsection (c) of the Challenged Statute and its corresponding permanent injunction against the enforcement of subsection (c), I dissent from the majority opinion and the judgment. I would reverse in such regard.

## II

Plaintiffs also sought a declaration and corresponding injunctive relief that the Grandfather Clause, 2005 Md. Laws ch. 262, § 2, violates the Equal Protection Clause of the Fourteenth Amendment.[3] The Fourteenth Amendment's Equal Protection Clause states, in relevant part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "limits all state action, prohibiting any state from denying a person equal protection through the enactment, administration, or enforcement of its laws and regulations." *Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275, 289 (4th Cir. 1998) (internal quotation marks & emphasis omitted).

The Grandfather Clause, effective October 1, 2005, exempts the following from being subject to Article 2B, § 10-405 in Prince George's County:

---

[3]Prince George's County first became subject to Article 2B, § 10-405 on October 1, 2005, pursuant to 2005 Md. Laws ch. 262 § 1.

a current alcoholic beverages license holder that cur-
rently conducts an activity that is made unlawful by
this Act only if the license holder:

(a) received approval from [Prince George's County
Board of License Commissioners] to conduct the
activity on or before August 15, 1981; and

(b) has owned the licensed premises continuously
since September 1, 1981.

2005 Md. Laws ch. 262 § 2. Thus, the Grandfather Clause
exempts from Article 2B, § 10-405 any then current alcoholic
beverages license holder that had received approval to con-
duct adult entertainment more than exactly twenty-four years,
one month, and sixteen days prior to the effective date of Arti-
cle 2B, § 10-405 on October 1, 2005, and had owned the
licensed premises continuously since September 1, 1981.
2005 Md. Laws ch. 262, § 2.

Below, the district court held that the Grandfather Clause
was unrelated to any legitimate community interest and found
that it was enacted solely to favor a politically connected busi-
ness establishment, and therefore, violated the Equal Protec-
tion Clause of the Fourteenth Amendment. *The Legend Night
Club v. Prince George's County Bd. Of License Comm'rs*,
2009 WL 926989 at *6 (D. Md. April 1, 2009). The district
court also rejected Defendants' contention that it should sever
the Grandfather Clause so as to cure the Equal Protection
defect. *Id.*

On appeal, Defendants argue that the district court erred in
holding that the Grandfather Clause violates the Equal Protec-
tion Clause, because the district court improperly relied upon
the testimony of former Senator Broadwater in finding that
the Maryland legislature enacted the Grandfather Clause to
specifically favor the Ebony Club.[4] Defendants contend that

---

[4]There is debate among the parties as to whether the Grandfather Clause
actually exempts the Ebony Club, because Senator Broadwater apparently

the district court should have determined that the Grandfather Clause serves typical, legitimate reliance interests. Alternatively, Defendants contend that the district court should have severed the Grandfather Clause instead of striking down Article 2B, § 10-405(c)-(d), as amended by 2005 Md. Laws ch. 262, *in toto* as violative of the Equal Protection Clause.

I agree with the district court that no reasonably conceivable state of facts exists that could provide a rational basis for the classification in the Grandfather Clause. *Legend Night Club*, 2009 WL 926989 at *5. ("Where an Equal Protection challenge is brought against a statute that does not draw a distinction based on a suspect class, the statute is presumed constitutional, so long as the challenged classification rationally relates to a legitimate state interest."). When the Maryland Legislature enacted 2005 Md. Laws ch. 262, the Legend Night Club had been in business four days short of twenty-three years. Given the relatively little difference in time between adult night clubs in business twenty four years versus adult night clubs in business twenty-three years, Defendants' proffered rationale of typical, legitimate reliance interests, is farfetched. Accordingly, I would hold that the district court was correct in holding that the Grandfather Clause violates the Equal Protection Clause.

In my opinion, however, the district court erred in not severing the Grandfather Clause. State law governs questions pertaining to the severability of a state statute's provisions, *Sons of Confederate Veterans, Inc., ex rel. Griffin v. Comm'r of Va. Dep't of Motor Vehicles*, 288 F.3d 610, 627 (4th Cir. 2002), and Maryland law provides that Maryland statutes are severable unless a statute specifically provides otherwise or a statute is "incomplete and incapable of being executed in accordance with legislative intent," Md. Code, Art. 1, § 23.

---

transferred ownership of the club to his wife and son at some point. This matter is irrelevant to the current analysis on appeal.

Here, Article 2B, § 10-405(c)-(d) is readily executable absent the Grandfather Clause. Accordingly, although the district court correctly held that the Grandfather Clause violated the Equal Protection Clause, it erred in relying on such violation to strike down the entirety of Article 2B, § 10-405(c)-(d), as amended by 2005 Md. Laws ch. 262, instead of severing the Grandfather Clause.

## III

For the reasons stated, I would reverse the district court's declaration that subsection (c) of the Challenged Statute is violative of the First Amendment and its corresponding permanent injunction. I would affirm the district court's declaration that subsection (d) of the Challenged Statute is violative of the First Amendment and its corresponding permanent injunction based upon such violation. Finally, I would affirm the district court's declaration that the Grandfather Clause violates the Equal Protection Clause of the Fourteenth Amendment, sever the Grandfather Clause from the Challenged Statute, and reverse the corresponding permanent injunction to the extent that it enjoins enforcement of the Challenged Statute based upon the district court's holding that the Grandfather Clause violates the Equal Protection Clause.